Christoper A. DAY, Plaintiff,

v.

**TEMPLE DRILLING COMPANY, Defendant,**

**Chevron U.S.A., Inc., Gulf Oil Corporation, and Shell Oil Company, Garnishee/Defendants.**

**Civ. A. No. J85–0398(B).**

United States District Court, S.D. Mississippi, Jackson Division.

July 9, 1985.

Samuel H. Wilkins, Jackson, Miss., for plaintiff.

James A. Boone, Rexford T. Brown, Jackson, Miss., James O. Dukes, Gulfport, Miss., Howard O. Leach, Jr. and Arthur A. Crais, Jr., New Orleans, La., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court upon the Motion of Defendant, Temple Drilling Company ("Temple"), to Dismiss and to Quash the Writs of Attachment and Garnishment against Garnishee/Defendants, Chevron U.S.A., Inc., Gulf Oil Corporation and Shell Oil Company.

## FACTS

On April 26, 1985, Plaintiff, Christoper A. Day ("Day"), sued Temple, his employer, and requested that writs of garnishment be issued against Chevron, Gulf and Shell pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. According to the Complaint, Day, a Mississippi resident, was employed by Temple as a "maintenance roustabout" on an offshore drilling rig known as the "Cheyenne." Day alleges that in January 1984, while engaged in the scope of his employment, he slipped and fell down a greasy and rain-covered stairway leading to the motor room of the rig. As a result of this fall, Day claims he sustained severe and permanent injuries attributable to the negligence of Temple for which he is entitled to recover.

Since Temple is not subject to the personal jurisdiction of this Court, Day requested that Chevron, Gulf and Shell be personally served with writs of garnishment pursuant to Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims. Rule B(1) provides in pertinent part:

With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees ..., if the defendant shall not be found within the district.

Gulf answered the writ of garnishment, admitting a debt owed to Temple in the amount of $1,010,000.00. Gulf also answered interrogatories served with the writ of garnishment, stating that the debt owed Temple arose out of billings from Temple for services performed by Temple pursuant to a contract between it and Gulf. Gulf further states that the contract was not executed in Mississippi nor were the services performed by Temple in Mississippi or its territorial waters.

Shell has also responded to garnishment interrogatories, stating that one of its subsidiaries has entered into a contract with Temple for services to be performed by Temple in Louisiana with payment for the services to be made by the Shell subsidiary from Texas. Chevron has not answered at this time.

Temple moves to dismiss and to quash the writs of garnishment for the following reasons:

(1) No property or res belonging to Temple is present within the district to support personal jurisdiction over Temple;

(2) No "minimum contacts" exist in Mississippi to support jurisdiction over Temple;

(3) Rule B is unconstitutional under the Fifth Amendment.

## THE EXISTENCE OF A RES IN MISSISSIPPI

Temple argues that this Court does not have jurisdiction over it pursuant to Rule B because Day has not attached or garnished property of Temple located within the district. In essence, Temple argues that the situs of a debt does not follow the debtor so that jurisdiction over the garnishee/defendants does not grant jurisdiction over the debts. In support, Temple primarily relies on an unpublished decision of this Court in *Beall v. Ocean Drilling and Exploration Company, et al.*, Civil Action No. J78–0536(C) (S.D.Miss. Feb. 5, 1979), wherein Judge Harold Cox dismissed an action similar to the one *sub judice* upon finding that:

... This Court does not have jurisdiction over the ... defendant ...; *no indebtedness was owed by any of the garnished defendants to the principal defendant,* ... and none of the garnishee defendants had any property or effects of said defendant in their possession or under their control, which would be subject to or affected by the writ of attachment and garnishment ..., and there is no res within this district which could support the jurisdiction of this Court in this case.... [Emphasis added].

■ This Court is not bound by the unpublished decision in *Beall* nor does it consider *Beall* dispositive of the Motion of Temple. In *Beall,* the Court found that the garnishee/defendants owed nothing to the principal defendant. Consequently, as the Court found, there was no debt to attach

and, certainly no "res" within Mississippi to support jurisdiction over the principal defendant. That is not the case here. In this case, the garnishee/defendants have been personally served with the writs of garnishment. Gulf has answered, admitting owing Temple a sizeable indebtedness. Shell has admitted a debt may be owed by its subsidiary to Temple. Chevron has not answered. As such, a "res" exists in Mississippi such that jurisdiction over Temple is proper.

Although no cases have been found considering the situs of the debt in quasi in rem admiralty actions, this Court is persuaded by the decision of the Fifth Circuit in *Belcher Company of Alabama, Inc. v. M/V Maratha Mariner,* 724 F.2d 1161 (5th Cir.1984) such that if the court has jurisdiction over the garnishee/defendant, it has jurisdiction over the "res".

*Belcher* involved an in rem libel action against a vessel to recover for fuel bunkers furnished the vessel. Jurisdiction was obtained by attachment of the vessel. The Court noted that under the admiralty law of the United States there are three categories of claims: (1) an in personam action filed against the owner of the vessel personally; (2) an in rem action filed against the vessel; and (3) a quasi in rem action based on a claim for money begun by attachment or other seizure of property

... *when the court has no jurisdiction over the person of the defendant, but has jurisdiction* over a thing belonging to him or *over a person who is indebted to, or owes a duty to the defendant.* 724 F.2d at 1164. [Emphasis added].

The Court further noted that attachment issues

'with respect to any admiralty or maritime claim in personam' and its purpose is to 'attach the defendant's goods or chattels' or other assets if the defendant shall not be found in the jurisdiction. Rule B. *Attachment may be used for any debt.*

*Id.* [Emphasis added]. Consequently, it appears that the Fifth Circuit would hold

that in quasi in rem actions, if the court has jurisdiction over the garnishee-defendant, it has jurisdiction over the debt.

Likewise, in *Engineering Equipment Company v. S/F Selene*, 446 F.Supp. 706 (S.D.N.Y.1978), the plaintiff sought leave to file a Rule B(1) complaint attaching the property of certain foreign defendants to obtain quasi in rem jurisdiction. The defendants suggested that the debts the plaintiff sought to garnish had no local situs and, therefore, the court had no jurisdiction. The court found:

> ... this contention is without merit. Since the Holt defendants (the garnishees) are subject to our in personam jurisdiction, the debts are deemed to have their situs within the district. Thus, there is no doubt that the requirements of Rule B(1) have been satisfied in this case.

446 F.Supp. at 708–09.

In so ruling, the court deferred to state law to ascertain whether jurisdiction over the garnishee-defendant was synonymous with jurisdiction over the debt. 446 F.Supp. at 709 n. 5. Mississippi law also holds that jurisdiction over the garnishee-defendant is synonymous with jurisdiction over the debt. *See, e.g., Keathley v. Hancock*, 53 So.2d 29 (Miss.1951).

■ This Court concludes that since it has personal jurisdiction over the garnishee/defendants, Gulf, Shell and Chevron, it also has jurisdiction over any indebtedness owed by the garnishee/defendants to Temple. This issue appears to be a matter of first impression. The Court recognizes that its decision has a considerable effect on parties like Temple. However, the ruling of this Court is not inconsistent with the purpose of Rule B.

> [B]y preserving maritime attachment and garnishment, a claimant is enabled to obtain jurisdiction over credits and effects of the defendant in any number of places where these may be attacked or garnished, although the defendant's residence or place of business may be halfway around the world and the occurrence underlying the suit took place in some other district, or the high seas, or in a foreign country. The practical importance to plaintiffs in preserving this remedy, which antedates the formulation of a comparable common law remedy, is readily apparent.

7A Moore's *Federal Practice* ¶ 90 at 493.

## NECESSITY OF MINIMUM CONTACTS

Temple next argues that Rule B(1) violates the substantive due process clause of the Fifth Amendment because it permits the Court to exercise jurisdiction despite the absence of minimum contacts as required by *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

■ This contention is without merit. In *Grand Bahama Petroleum Company, Ltd. v. Canadian Transportation Agencies, Ltd.*, 450 F.Supp. 447, 453 (W.D.Wash. 1978), the court considered at length the applicability of *Shaffer v. Heitner* to Rule B, and concluded that:

> ... maritime attachment is part and parcel of admiralty jurisprudence and has its justification in the maritime context. The history of maritime attachment itself indicates as well that the common law principles enunciated in *Shaffer* do not necessarily apply to it.

Since admiralty deals with circumstances generally different from those of the common law, this Court is of the opinion that dismissal of this action based upon *Shaffer v. Heitner* would be improper. *See also, Trans-Asiatic Oil Limited S.A. v. Apex Oil Company*, 743 F.2d 956, 959 (1st Cir. 1984).

## CONSTITUTIONALITY OF RULE B

Temple finally argues that Rule B violates Fifth Amendment procedural due process rights since it fails to provide for a constitutional procedure for seizure of property. Specifically, Temple argues that Rule B does not provide for: (1) effective notice to persons having interests in the property; (2) judicial review prior to attachment of the property; (3) avoidance of conclusory allegations in the complaint; (4)

security posted by the plaintiff to protect the owner of the property under attachment; and (5) a meaningful and prompt post-attachment hearing.

The question Temple presents thus becomes whether the same procedural due process that is required before deprivation of property occurs in a non-maritime action should be required before attachment occurs in a maritime action under Rule B. After careful consideration of the plethora of cases which have confronted this issue, the Court thinks not. Although no court to which this Court is accountable has considered the constitutionality of Rule B, this Court is of the opinion that Rule B is constitutional based upon the exhaustive analysis of procedural due process requirements in the maritime context in *Trans-Asiatic Oil Limited, S.A. v. Apex Oil Company, supra; Schiffahrtsgesellschaft v. A. Bottacchi*, 732 F.2d 1543 (11th Cir. 1984); *Merchants National Bank of Mobile v. The Dredge General G.L. Gillespie*, 663 F.2d 1338 (5th Cir.1981), *cert. denied*, 456 U.S. 966, 102 S.Ct. 2263, 72 L.Ed.2d 865 (1982) (Rule C is constitutional); *Parcel Tankers, Inc. v. Formosa Plastics Corporation*, 569 F.Supp. 1459 (S.D.Tex.1983). The courts in these cases considered whether the due process requirements applicable in common law should also apply in an admiralty setting and determined that maritime attachment warrants consideration of a more flexible application of the doctrines of due process consistent with its historical function as a security device in maritime commerce. As stated in *Schiffahrtsgesellschaft*, 732 F.2d at 1546,

> ... constitutional review of Rule B attachments is not governed by the unyielding guidelines promulgated in *Sniadach* and cases which followed. That approach simply does not hold water in the context of maritime commerce.

Accordingly, this Court also agrees that the transient nature of maritime property precludes the application of common law due process requirements.

For the reasons stated above, the Motion of Defendant, Temple Drilling Company, to Dismiss and to Quash the Writs of Attachment and Garnishment is hereby denied.